# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SANDRA L. VISCOSI, ADMINISTRATRIX :
OF THE ESTATE OF LOUIS V. VISCOSI, :
         Plaintiff, :
    v. : Civil Action No.
        : 3:07cv1559 (SRU)
AMERICAN OPTICAL CORPORATION, :
ET AL., 
         Defendants.

## RULING ON MOTION TO REMAND

Sandra Viscosi, administratrix of the estate of Louis Viscosi, brought this suit in state court against a number of defendants, including Buffalo Pumps, Inc. ("Buffalo Pumps"). Viscosi alleged products-liability claims arising out of injuries that Louis Viscosi suffered as a result of his exposure to asbestos-related materials that the defendants supplied to Viscosi's workplaces while in the Navy and afterwards. Buffalo Pumps removed this action under the Federal Officer Removal Statute, asserting a "military contractor" defense. Viscosi has moved to remand this case to state court. For the reasons discussed below, that motion (**doc. #22**) is GRANTED.

**I.    Background**

On May 8, 2003, Louis and Sandra Viscosi (together, "plaintiffs" or "Viscosi") filed a state court action against dozens of defendants due to injuries Louis Viscosi suffered as a result of exposure to asbestos. On October 2, 2003, Viscosi filed an amended complaint naming Buffalo Pumps as an additional defendant; Buffalo Pumps received that complaint on February 11, 2004. In March 2004, the plaintiffs filed a second amended complaint, substituting Sandra Viscosi as administratrix of the estate of Louis Viscosi.

The plaintiffs' state court complaint alleged that Viscosi was exposed to asbestos-containing products manufactured by the various defendants while in the U.S. Navy at various

jobsites from 1947-1952, as well as when working as a boiler tender in Connecticut in 1952.

On May 23, 2007, Buffalo Pumps received Viscosi's discovery responses, indicating that Viscosi's exposure to asbestos occurred at a number of sites, both naval and civilian, including on board the USS Ingraham from 1949-1952 while working as a fireman/boiler tender.

On September 26, 2007, Buffalo Pumps received supplemental discovery responses that explicitly indicated that a Buffalo Pumps product was installed on the U.S.S. Ingraham and described Viscosi's exposure to asbestos while on the USS Ingraham, including the details of his exposure. On October 23, 2007, Buffalo Pumps removed this case to federal court.

On October 29, 2007, I ordered this action remanded to state court because the complaint did not state a federal cause of action and removal was instead based on a federal defense. Buffalo Pumps submitted a motion for reconsideration, indicating that it was removing the case under the federal officer removal statute, 28 U.S.C. § 1442, and that removal was therefore proper. On November 29, 2007, I granted that motion for reconsideration, and instructed the parties to brief whether this case should be remanded. For the reasons discussed below, this case is remanded to the courts of the state of Connecticut for all further proceedings.

## II. Discussion

### A. The Federal Officer Removal Statute

Ordinarily, the well-pleaded complaint rule dictates that removal cannot be predicated on a federal defense, but must be grounded on the complaint itself. *See, e.g., Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). The Federal Officer Removal Statute provides an exception to that general rule, and states in relevant part:

A civil action or criminal prosecution commenced in a State court against any of the

> following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. . . .

28 U.S.C. § 1442(a). As the Second Circuit recently stated, the statute allows for removal by "persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 133 (2d Cir. 2008). In *Mesa v. California*, 489 U.S. 121 (1989), the Supreme Court clarified when the statute applies, including what elements a defendant must satisfy in order to assert such a defense. *Mesa* makes clear "the requirement that federal officer removal must be predicated on the allegation of a *colorable* federal defense." 489 U.S. at 129 (emphasis added). More fully, to remove a state court action under the statute, a party must establish that (1) it has a colorable federal defense, (2) it acted under the direction of a federal agency or officer, and (3) there is a causal nexus between the claims and the conduct performed under the color of federal office. *Id*. at 124-25; *see also Nesbiet v. General Electric Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005).

    1.    *Colorable federal defense*

Courts have broadly construed the "colorable federal defense" element for federal officer removal. As the Supreme Court has stated, "In construing the colorable federal defense requirement, we have rejected a narrow, grudging interpretation of the statute, recognizing that one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. *We therefore do not require the officer virtually to win his case before he can have it removed.*" *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (citing

3

*Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (internal quotation marks omitted) (emphasis added)).

This is important: here, the plaintiffs' briefs argue the merits of Buffalo Pumps's defense, including arguments why certain evidence should not be credited and that Buffalo Pumps had a buyer-seller relationship with the Navy, rather than whether Buffalo Pumps "acted under" the direction of the Navy or otherwise has sufficiently demonstrated the relationship that the statute requires. The important question to ask, in assessing whether Buffalo Pumps may remove under the federal removal statute, is whether Buffalo Pumps presents a colorable defense – in this case, the military contractor (or federal contractor) defense.

Under the military contractor defense, federal law and requirements effectively displace state law when the two are in conflict and state law would impose liability on private parties acting under the direction of the federal government or military, resulting in higher costs to the government. Put differently, although the courts have not clarified whether the military contractor defense is a form of immunity, the military contractor defense protects private parties carrying out the work of the government where, if the government itself did that same work, it would enjoy immunity from state tort suits.

The Supreme Court has most thoroughly discussed the military contractor defense in *Boyle v. United Technologies Corporation*, 487 U.S. 500 (1988). In *Boyle*, a helicopter manufacturer asserted the military contractor defense when a helicopter crashed and its pilot died because the escape hatch on the helicopter opened outwards, as per government specifications, instead of inwards, which might have saved the pilot. When the pilot's family sued the helicopter manufacturer, it was merely a suit between private parties, but "[t]he imposition of

liability on Government contractors [would] directly affect the terms of Government contracts: either the contractor [would] decline to manufacture the design specified by the Government, or it [would] raise its price. Either way, the interests of the United States [would] be directly affected." 487 U.S. at 507.

A federal interest alone, though, is not enough to protect a federal contractor. Scenarios exist where, for instance, a contractor could comply with federal government regulations concerning the makeup of a product and still comply with any state law duty to issue appropriate warnings. If the state law obligations and the federal obligations do not conflict, federal law would not pre-empt state law. "Displacement will only occur where . . . a significant conflict exists between an identifiable federal policy or interest and the operation of state law." *Id.* (internal citations and quotation marks omitted).

The test that the Court has laid out for a military or federal contractor defense, then, takes into account federal interests along with state interests:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated - *i.e.*, they assure [sic] that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Id.* at 512. Because the claims presently at issue are failure-to-warn claims, Buffalo Pumps asserts a colorable defense in this case if it can make a colorable showing that (1) the Navy approved reasonably precise specifications regarding asbestos warnings, (2) Buffalo Pumps

5

complied with those specifications, and (3) Buffalo Pumps warned the Navy about any asbestos dangers or the need for any asbestos warnings, to the extent that Buffalo Pumps was aware of dangers that the Navy was not. To make that showing, Buffalo Pumps relies on affidavits from four individuals: Roger Horne, a retired Rear Admiral of the Navy, Dr. Samuel Forman, the proprietor of an occupational health clinic monitoring asbestos exposure and a student of the Navy's historical awareness of asbestos hazards, David Sargent, Jr. a Navy Rear Admiral, and Martin Kraft, the current production manager (and corporate representative) of Buffalo Pumps.

In litigation involving Buffalo Pumps (and similar litigation involving other parties), other courts in this district and other districts have held that affidavits from these individuals (or similar individuals) satisfy the elements of the military contractor defense for removal purposes. *See O'Connell v. Foster Wheeler Energy Corp*, 544 F. Supp. 2d 51 (D. Mass. 2008) (denying plaintiff's motion to remand after Buffalo Pumps removed asbestos litigation); *see also Contois v. Able Industries*, 523 F. Supp. 2d 155 (D. Conn. 2007); *Nesbiet*, 399 F. Supp. 2d at 212. In short, the Horne affidavit attests to his experience as a naval ship engineer, including knowledge of naval ship specifications, during the time frame when Viscosi worked on the USS Ingraham. He stated that Navy vessels were manufactured according to detailed specifications, and also that those specifications "covered the nature of any communication affixed to pumps . . . [and] governed the form and content of written materials to be delivered with equipment." Horne Aff. at ¶¶ 6, 11, 14. The Sargent affidavit discusses Navy control over all aspects of shipbuilding contracts, including any warnings that contractors would have wanted to issue. He states that "written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel." Sargent Aff. at ¶ 51. Those

6

affidavits satisfy the requirement that Buffalo Pumps make a colorable showing that the Navy exercised control over the content and form of any asbestos-related (or other) warnings. Although Kraft was not at Buffalo Pumps during the time frame in question, his affidavit attests to his familiarity with the company's work, historically, and to Buffalo Pumps's compliance with Navy specifications regarding product makeup and warnings. For the purposes of removability, Kraft's affidavit satisfies the second element of the military contractor defense under *Boyle*.

The Forman affidavit satisfies the element that Buffalo Pumps made the Navy aware of any health dangers about which Buffalo Pumps was aware but the federal government was not. As Forman states, the Navy's knowledge of the health hazards associated with asbestos aboard Navy vessels during the 1940s was state-of-the-art. Consequently, Buffalo Pumps could not have had any information regarding health risks of asbestos that the Navy did not already have. *See Nesbeit*, 399 F. Supp. 2d at 209; *O'Connell*, 544 F. Supp. 2d at 57.

Viscosi argues that *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187 (D. Mass. Jan. 3, 2008) (granting the plaintiffs' motion for remand), is persuasive authority. In *Hilbert*, Judge Gertner held that the defendants did not introduce evidence to satisfy the first prong of the military contractor defense because the affiant in question had been in the Air Force rather than the Navy, and because affiants only indicated that the Navy dicated the form, rather than the substance, of any asbestos or other warnings. That is not the case here. Horne and Sargent have personal knowledge of the Navy's shipbuilding program and specifications, and have also attested to the role the Navy took in regulating the content (and form) of warnings. For those reasons, *Hilbert* is not persuasive in this case. *See O'Connell*, 544 F. Supp. 2d at 58-59. Buffalo Pumps has satisfied the first element for federal officer removal under *Mesa*, by presenting a

colorable military contractor defense.

### 2. "Acting Under" Requirement

The Supreme Court and the Second Circuit have both recently discussed when a defendant meets the "acting under" requirement of the federal officer removal statute. "[A]n entity 'acts under' a federal officer when it 'assists, or helps carry out, the duties or tasks of the federal superior.'" *Isaacson*, 517 F.3d at 137 (quoting *Watson v. Philip Morris Co., Inc.*, 127 S. Ct. 2301, 2308 (June 11, 2007) (internal punctuation and brackets omitted)). Because, as discussed above, the Navy issued reasonably precise specifications concerning asbestos warnings, and Buffalo Pumps complied with those specifications, Buffalo Pumps acted under the direction of federal officers.

> [W]hether a causal connection exists sufficient to satisfy . . . the *Mesa* test is closely related to whether the defendant[] ha[s] shown certain elements of [its] asserted federal defense. A causal nexus is shown when there is a causal relationship between the act undertaken at the government's direction and the harms the plaintiff alleges. The complaint must arise out of the acts done by [the defendant] under color of federal authority and in enforcement of federal law, and the defendant must by direct averment exclude the possibility that it was based on actors or conduct . . . not justified by the federal duty.
> On the facts of this case, the causal inquiry is closely tied to whether the government issued reasonably precise specifications as to the warnings. If the government did issue reasonably precise specifications and the defendants obeyed them, then the federal contractual obligation caused the plaintiffs' harm. The converse is also true: if the government did not issue reasonably precise specifications . . . then the plaintiffs' harms were not caused by the defendants' contractual responsibilities.

*Hilbert*, 529 F. Supp. 2d at 203 (internal citations and quotation marks omitted). *See also O'Connell*, 544 F. Supp. 2d at 58 ("As a practical matter, this remaining element is closely bound to the determination that Buffalo Pumps has a colorable military contractor defense."); *Nesbiet*, 399 F. Supp. 2d at 212.

Here, as discussed more fully above, Buffalo Pumps has asserted a colorable military contractor defense. That defense is colorable precisely because, at least for the purposes of determining whether this case was properly removed, Buffalo Pumps acted under the direction and specifications of the U.S. Navy, and any failure to warn was caused by the defendant's compliance with those specifications. Accordingly, Buffalo Pumps has satisfied the three prongs of the *Mesa* test, and was entitled to remove this case.

B.     Is Buffalo Pumps's Removal Timely?

Although Buffalo Pumps's removal is otherwise appropriate, that removal would fail if it were untimely. Viscosi argues that Buffalo Pumps did not timely remove this case, and that the triggering event for removal occurred when Buffalo Pumps was initially served with Viscosi's pleading, as opposed to September 26, 2007, when Buffalo Pumps received supplemental discovery responses more precisely describing Viscosi's exposure to asbestos while serving in the Navy.

Pursuant to 28 U.S.C. § 1446(b), a defendant may timely remove a case from state court within thirty days of receipt of the initial pleading in the case, or of the document in the case that first indicates the basis for removal if not the initial pleading. To determine whether defendants have notice of grounds for removal, courts look to information within the four corners of the document that may trigger removal. *See, e.g., Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

In assessing whether a document starts the clock on a defendant's time for removal, it is important that the triggering document contain the information that gives rise to removal within its four corners. If the defendant cannot be sure that the case is removable, the document does

9

not trigger removability, and courts have held that it is irrelevant that the defendant may have an independent knowledge of facts justifying removal. *See Rowe v. Marder*, 750 F. Supp. 718 (W.D. Pa. 1990); *Kingman v. Sears, Roebuck and Co.*, 526 F. Supp. 1182 (D. Me. 1981). The defendant must be able reasonably and intelligently to conclude, from a fair reading of the document, that the basis for removability (whether diversity, federal officer removal, or any other basis) is met. *E.g., Hilbert*, 529 F. Supp. 2d at 194. Although a defendant need not look beyond the triggering document for facts that would indicate removability, it must "apply a reasonable amount of intelligence" in analyzing whether or not a case can be removed. *See, e.g., Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001). To place the defendants on notice for purposes of a federal contractor defense, a document must provide "sufficiently specific facts or allegations to allow the defendant reasonably to identify the contracts through which the defense is being asserted." *Hilbert*, 529 F. Supp. 2d at 194 (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). Here, the operative state court pleading states that

> The Plaintiff was exposed to various asbestos containing products while in the U.S. Navy at various jobsites, at various times during the years 1947-1952 and while working at various jobsites in Connecticut as a boiler tender, at various times during the year 1952, and such exposure in Connecticut contributed in part or totally to the plaintiff's contraction of asbestos-related Pleural Plaques and other asbestos-related pathologies.

Am. Compl. at ¶ 5 (attached as Ex. 1 to Not. of Removal). Although Buffalo Pumps argues otherwise, Viscosi alleged in his complaint that he was exposed to "asbestos containing products" while in the Navy. Viscosi further alleged that Buffalo Pumps, among other defendants, produced asbestos products, supplied those products to Viscosi's employer, that Viscosi was forced to come into contact with those products, that any warnings the products may

have carried were improper and inadequate, and that his exposure to asbestos caused disease or injury to him. *Id.* at ¶¶ 3, 5, 7-8, 11, 13, 18-20. Although Viscosi's state court complaint may not contain the sort of precise allegations with regard to Buffalo Pumps that Buffalo Pumps now argues were necessary to ascertain removability, that complaint indicates that Buffalo Pumps (among others) supplied asbestos to Viscosi's employer, and that Viscosi suffered injury as a result of exposure to that asbestos, at least in part during the course of his Navy service.

Here, the parties do not dispute that Viscosi's September 26, 2007 supplemental discovery responses were the first document that provided a detailed connection between Viscosi's asbestos exposure and his Navy service, specifically identifying the Buffalo Pumps product that was present on the USS Ingraham. Buffalo Pumps argues that it did not and could not know until that point that it could assert a colorable military contractor defense, and that it was therefore not until September 26, 2007 that the time for removal began to run. According to Buffalo Pumps's briefs and supporting affidavits, the company sold numerous products that contained asbestos to both military and civilian purchasers; if Buffalo Pumps was named as a defendant due to sales to a civilian purchaser, it would not have a colorable military contractor defense.

Contrary to Buffalo Pumps's arguments, all the information that Buffalo Pumps needed to assert its military contractor defense and to remove was contained in Viscosi's amended complaint of March 18, 2004 and/or Viscosi's answers to interrogatories and requests for production dated May 23, 2007. The amended complaint states that "The plaintiff was exposed to various asbestos containing products while in the U.S. Navy at various jobsites, at various times during the years 1947-1952 . . . ." Am. Compl. at ¶ 5. The amended complaint further

indicates that "the defendants . . . mined, processed, manufactured, designed, tested and/or packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos-containing products to the employer(s) of the plaintiff," *Id.* at ¶ 7, that "[a]t *all* relevant times that the plaintiff was working, the plaintiff was exposed to asbestos materials and products," *Id.* at ¶ 8 (emphasis added), that Viscosi has suffered injury as a result of that asbestos exposure, *Id.* at ¶¶ 12-14, and that "the defendant[s] wrongfully contracted for, mined[,] milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, and sold asbestos products and materials to the plaintiff, the plaintiff's employer(s) and/or to others . . . and the defendants failed to render proper, adequate and correct warnings, advice, instruction and information . . . ." *Id.* at ¶ 25.

Even if that information were not enough to put Buffalo Pumps on notice of its federal defense and basis for removal, Viscosi's May 23, 2007 responses to discovery requests do so. Those responses include a "Jobsite List" indicating that Viscosi worked aboard the U.S.S. Ingraham from 1949 to 1952, in the employ of the U.S. Navy, as a boiler tender and fireman. Jobsite List, att. to Pl. Answers and Objections Def's. Interrogs. and Reqs. Produc. (Ex. 2 to Not. Removal). If Buffalo Pumps was not aware until supplemental discovery responses dated September 25, 2007, of the detailed connection between Viscosi's Navy service and his exposure to a Buffalo Pumps-supplied asbestos-containing device, Buffalo Pumps was on notice of Viscosi's allegation of exposure to a Buffalo Pumps device during his Navy service on March 18, 2004, and Buffalo Pumps was notified on May 23, 2007, that Viscosi's Navy service took place in substantial part aboard the U.S.S. Ingraham.

Recently, Judge Arterton of this District has considered similar factual scenarios and legal

assertions in *Pantalone v. Aurora Pump Co.*, No. 3:07cv1336 (JBA), 2008 WL 4272649 (D. Conn. Sept. 18, 2008). There, as here, "Buffalo Pumps ha[d] not demonstrated that it could not have reasonably ascertained the case's removability" in a timely manner. 2008 WL 4272649, at *14. Accordingly, Viscosi's motion to remand is granted.

## III. Conclusion

Because Buffalo Pumps failed to timely remove this action to federal court, Viscosi's motion for remand (**doc. # 22**) is GRANTED.

It is so ordered.

Dated this 29th day of September 2008 at Bridgeport, Connecticut.

                                 /s/ Stefan R. Underhill
                                      Stefan R. Underhill
                                      United States District Judge